## SISSOM v. SWANSON et al.
### No. 8418.

Court of Civil Appeals of Texas. San Antonio. April 9, 1930.

Rehearing Denied April 30, 1930.

Rabel & Fristoe, of Harlingen, for appellant.

Greenwood & Lewis, of Harlingen, for appellees.

FLY, C. J.

Appellant applied for a writ of garnishment against D. R. Russell and B. F. Dittmar Company, alleging that on October 1, 1928, in a case styled A. H. Sissom v. J. P. Swanson and Scott McKy, he obtained a judgment against them for the sum of $15,681.29, with interest, and costs in the sum of $158.20, less the sum of $13,950. B. F. Dittmar Company answered that on or about June 24, 1929, T. A. Reagan and wife applied to said company for a loan to be secured by a lien on lot 11, in block 2, of the Nichols & Howell addition to the city of Harlingen, which application was granted and the loan made of $3,000; that at the time the loan was made the Reagans requested the company to pay off certain debts, which was done, in the sum of $2,494.87. That at the time the loan was made D. R. Russell, a cogarnishee, held a vendor's lien against the land of Swanson in the principal sum of $3,000; that from the proceeds of the loan there remains in the hands of the company $505.13, which has not been disbursed, but held until taxes due on the real estate are paid. The B. F. Dittmar Company paid into court the $505.13, subject to the rights of the company to the taxes amounting to $86.57, with interest and penalties, and the sum of $48.75 for abstracts and attorneys' fees. Swanson admitted the debt claimed by appellant, but alleged that on July 2, 1929, appellant made a contract with him by which appellant verbally agreed to release all claims on lot 11, block 2, in Harlingen, and on all money from the sale of the land and other property, for a cash consideration of $200, which was paid.

The cause was submitted to a jury on one special issue, as follows: "At the time of the execution judgment liens on the Willacy and Cameron County lands, was there an agreement entered into between Gerald McKinna, agent for the defendant J. P. Swanson, and Rabel & Fristoe, attorneys and agents for the plaintiff A. H. Sissom, that the funds arising from the sale of the Cameron County land were released?" The jury answered the issue in the affirmative, and judgment was rendered in favor of Swanson against Dittmar Company for $367.81, and Russell and the company were allowed attorneys' fees of $25 each and all costs, which were assessed against A. H. Sissom.

The only issue was as to whether appellant had relinquished to Swanson all the funds arising from the property that were in existence when the land was released. The jury found that the release of the funds had been made, and, if the evidence sustains that verdict, it cannot be disturbed by this court.

The evidence is quite short, and we will give a synopsis of it. Gerald McKinney testified for Swanson that he was acquainted with Swanson and was representing him in the sale of his farm in Willacy county and a house and lot in Harlingen. Swanson had owned the farm and house and lot for years, and the witness swore he went to see A. J. Rabel, attorney for Sissom, and agreed with him verbally, in connection with written releases of the liens on the lands, that the proceeds from the lands would be released. McKinney swore: "Before the completion of either of these deals I made a trade with Mr. Sissom for the release of these properties and went to Rabel & Fristoe's office and had them to draw the releases and had it executed, for which I paid them, and at that time there was a distinct verbal understanding with regard to the $500.00. There was no reason for me to have the property released, it had been deeded two or three months, but I knew there were some proceeds coming to Mr. Swanson. I didn't care about the property, it had been deeded and they had accepted it and I said to Mr. Rabel that I didn't care about the property but wanted to know about the proceeds, did that release it? and he said of course, that was what we are doing it for, and after that I paid them the $200.00." He stated that Swanson in good faith sold the land. He testified that appellant told him he would be satisfied with whatever his attorney did. The firm of Rabel & Fristoe were the attorneys for appellant, and McKinney dealt with that firm. The evidence justified the verdict of the jury. Both of the attorneys were in the room when the agreement was made. The jury could reject the theory that Rabel, the senior partner in the firm of lawyers representing appellant, had no authority to represent appellant in the settlement with Swanson. Rabel did not testify that he had no authority to make the agreement, but denied making it. Appellant did not swear that Rabel did not have the authority to make the agreement, the only testimony on the subject being that of McKinney that appellant said anything Fristoe did would be all right. He swore that Fristoe had the agreement as to the funds "in mind."

The judgment is affirmed.